**NEILL v. PRYOR et ux. (No. 6401.)**

(Court of Civil Appeals of Texas. San Antonio. May 12, 1920.)

**1. Appeal and error &#9758;1062(1) — Erroneous special issue as to location of division line held harmless.**

In a suit to determine the boundary line marked by a former picket fence, a special issue as to where the present fence was located

with reference to the center line of the former fence including the posts, if erroneous because of the latter clause, was harmless, where the jury found the existing fence was on appellee's side of the line, even if the posts were not included in determining the center line of the former fence.

**2. Boundaries &#9758;35(5)—Evidence of division line according to deeds admissible to show location of admitted boundary.**

In a suit to determine a boundary line, where it was agreed that a former fence had been on the true line, evidence establishing the division line according to the deeds was admissible to show the location of the picket fence, and a requested instruction withdrawing such evidence from the jury was properly refused.

**3. Appeal and error &#9758;731(1) — Assignment that verdict was contrary to evidence too general.**

An assignment that the verdict is contrary to the preponderance of the evidence, and against the evidence, and shows that the jury either misunderstood the case or disregarded the evidence, is so general that the trial court could not have been thereby apprised of the theory on which plaintiff requested that the verdict should be set aside.

**4. Boundaries &#9758;37(3) — Evidence held to sustain verdict finding boundary as claimed by defendant.**

In a suit to locate a boundary which the parties agreed had been marked by a former picket fence, evidence of two witnesses, that they built the present fence with care not to encroach on plaintiff's lot as marked by the former fence, held sufficient to warrant a verdict for defendants, notwithstanding testimony of witnesses who had no particular reason to observe carefully that the new fence was on plaintiff's side of the former fence.

**5. Appeal and error &#9758;930(1) — Testimony most favorable to party securing verdict presumed true.**

The appellate court, in deference to the verdict, must accept as true the testimony most favorable to the party for whom the verdict was rendered.

**6. Appeal and error &#9758;1001(1)—Verdict supported by evidence must be upheld unless contrary to physical facts.**

The appellate court must uphold the verdict, unless the direct testimony supporting it cannot be correct because of physical facts or other evidence admitted to be correct.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by Mrs. Dora M. Neill against Ike T. Pryor and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

Guinn & McNeill, of San Antonio, for appellant.

Denman, Franklin & McGown, of San Antonio, for appellees.

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

MOURSUND, J. This is a suit by Mrs. Dora M. Neill against Ike T. Pryor and wife, Myra S. Pryor, which, in view of averments in the defendants' answer and cross-action and admissions in reply thereto by plaintiff, resolved itself into a suit to determine the location of a certain picket fence, admitted to have marked the line between the lot owned by plaintiff and that owned by Mrs. Pryor, both of which were out of block 10 in the city of San Antonio. This fence had been removed by defendants and a new fence erected which plaintiff contended had been so constructed as to deprive her of a 12-inch strip of land and place same in possession of defendants. There was also a controversy concerning another strip of land 5 inches in width, but on the trial the plaintiff abandoned her claim to such strip.

The court submitted the following question:

"Is the present fence located east or west of the old picket (or paling) fence, and how far? Answer by reference to the east side of the present fence and the center line of the old picket fence (meaning the center line of the average thickness of the old picket fence, including pickets and posts)."

The jury answered:

"We, the jury, find that the east side of the present fence is located three inches west of the center line of the old picket fence."

Judgment was rendered that plaintiff take nothing by her suit to recover any property sued for situated west of the east line of the present division fence; also, that she take nothing by her suit in so far as it involved the five inch strip. That part of the judgment relating to the line, the location of which was left to the jury, does not follow the verdict, for the reason that defendants in open court stated that they did not care to recover the three inches between the east line of the new fence built by them and the center of the old picket fence as located by the jury.

[1] By the first assignment complaint is made of the wording of the issue submitted to the jury, the contention being that the court erred in assuming or holding as a matter of law that the division line between the properties would be the center line of the average thickness of the old picket fence including pickets and posts, instead of requiring that the line should be established by ascertaining the distance from the new fence of a line marking where the west line of the pickets of the old fence were located or at least the east line of the pickets. In other words, that the thickness of the posts should not have been taken into consideration. It having been agreed that the old picket fence was 5½ inches thick, and the jury having found that the east side of the new Pryor fence is 3 inches west of the center line of the old paling fence, it appears that, even if either of the appellant's theories is adopted as the proper method to determine the boundary line as made by the old fence, nevertheless the appellant would not be entitled to recover, for the true line even under the theory most favorable to appellant, would be one-half inch on appellant's side of the new fence. We are unable to see how the appellant could have been prejudiced by the form of the question, and the appellant under the judgment of the court got all the land on which the picket fence had been situated and a half inch in addition. It follows that no error is pointed out by assignments 1 and 2 such as would require or justify a reversal of the judgment.

[2] The court did not err in refusing to give special charge No. 1 requested by plaintiff. The effect of such charge would have been to withdraw from the jury evidence showing where the division line between the parties was located according to their deeds, which evidence was admissible to be considered with the other facts and circumstances, several of which indicated that the old picket fence had been constructed on that very line. The purpose of plaintiff in asking the charge seems to have been to impress upon the jury the fact that under the admitted facts each party owned the land in her inclosure up to the old picket fence, but its effect would have been to prevent the jury from considering, in deciding where the picket fence was situated, the inference that it would naturally be placed on the true line.

[3] By the fourth assignment complaint is made that the verdict is contrary to the preponderance of the evidence and against the evidence and shows that the jury either misunderstood the case or disregarded the evidence. This assignment is so general that the trial court could not have been thereby apprised of the theory upon which the plaintiff relied to show that the verdict should be set aside.

[4] We have, however, carefully read the statement of facts and examined the exhibits sent up with the record, and conclude that it cannot be held that the verdict is so contrary to the great preponderance of the evidence as to warrant an appellate court in setting it aside. In fact, we do not believe that it can be said to preponderate in favor of plaintiff's contention. The testimony of Dietz and Campbell, who built the Pryor fence, is unequivocally to the effect that the present fence was placed a half inch or an inch west of the old picket fence line. They were instructed not to encroach on Mrs. Neill's lot, and they testified they did not do so. Their claim is not contradicted by any one who is shown to recollect definitely where the old fence line was situated. It is attempted to be fixed by reference to two objects, a tree and the brick post at the corner of the Pryor front fence. There is no uniformity in the theories as to location of the old fence line with reference to the brick post. Appellant testified that the brick post, not counting the cap, which protruded 3 inches, came over on

her line 4 to 6 inches. The brick pillar, or post, as it is sometimes called by the witnesses, is 18 inches wide. Afterwards she testified:

"The old picket fence butted up against this pillar near the center, more towards Mrs. Pryor's side than my own. * * * This old picket fence struck the pillar from the side next to me about 12 inches or more."

The witness Norris, who built the Pryor fence in 1907 against the old picket fence, first testified that the red line on Exhibit 3, which would be approximately two-thirds of the distance across the pillar, represented practically the place where the fence built by Pryor struck the pillar. This fence line was admittedly 7 or 8 inches from the old picket fence line. Later he testified the fence line built by him came to the left of the pillar. The jury was warranted in concluding that the recollection of appellant and Morris furnished no more certain basis for a conclusion as to the location of the old fence than the statements of Dietz and Campbell who claimed to have given particular attention to the location of the line.

The appellant relies with much confidence upon the theory that a certain tree was in the fence line of Pryor's fence constructed in 1907, but here again there is much doubt. Norris first testified that he remembered "that there were one or two trees along the fence line somewhere on Pryor's side"; then that he believed the fence he built struck the second tree as it went by. He then testified that the edge of the tree was in the line of property. Dietz testified that the trees were on Pryor's side of the fence; he had no recollection of either being in the line. Campbell testified that he remembered there were trees in the line of fence he and Dietz pulled down. He was not accurate in his conception of when a tree may be said to be in the line, for he said it was in the old line and also that it was in the fence line they built. Appellant's recollection was that the tree was partially on her side of the Pryor fence and thus created a break in the fence. Pryor's recollection was that the fence built by him did not touch the tree, but came close to it. He estimated that the tree was about 2 inches on his side of the fence built in 1907. He also testified, and this was not contradicted, that the tree bore no mark indicating that it had ever come in contact with a fence. Certain photographs were introduced in evidence, and the testimony of a photographer concerning what was disclosed by the same with reference to the tree; but his eyesight was tested and discovered to be less keen than that of jurors. We have closely examined the original photograph relied on by appellant, and are unable to find anything which convinces us that at the time it was taken the tree was partially upon appellant's side of the fence. The sidewalk in front of appellant's lot terminates at a point 3 inches on her side of the present fence; the curb also terminates short of the fence line. The sidewalk and the old picket fence were constructed before appellant purchased. It is a natural inference that the owner would construct the sidewalk as far as the partition fence, or that, if the sidewalk was first constructed, the partition fence would be made to coincide with the location of the sidewalk. There is a stob of an old cedar post about 3 inches on appellant's side of the present fence, and in line with the point of termination of the sidewalk, and this is relied on by appellees on the theory that it was a part of the old picket fence; but this is denied by appellant, who testified to seeing the stob in 1907 at the time the Pryor house was built.

The recollection of persons with regard to the exact location of trees, fences, and especially of relative distances, there being at the time they were viewed no controversy which would lead to a close inspection, is necessarily unreliable, and the jury probably concluded that there was no more certain guide than to accept as correct the testimony of Dietz and Campbell, who claimed that it was their specific purpose to ascertain the old line and stay within it.

[5, 6] The province of the jury is to pass upon the credibility of witnesses and the weight to be given their testimony. The appellate court, in deference to their verdict, must accept as true the testimony most favorable to appellees, and uphold the verdict, unless it is shown that the direct testimony supporting it cannot be correct by reason of physical facts or other evidence admitted to be correct.

When these well-settled rules are applied in this case, we conclude there can be no doubt of the sufficiency of the evidence to support the verdict.

The judgment is affirmed.